Robert J. Pierson died February 13, 1936. His four nephews, sons of his brother Dewey Pierson who died eight years before and who owned a 143-acre farm adjoining his 40 acres, presented a joint claim against the estate of Robert J. Pierson, deceased, in the sum of $3,092.89 to the commissioners on claims appointed by the probate court which was disallowed by them. An appeal was taken to the circuit court where a joint verdict was rendered in favor of claimants for $2,180.83. Judgment was entered, and the administrator appeals.
The claim presented covers services rendered by the nephews to their uncle over a period of about 11 years, commencing in 1925 and continuing until his death in February, 1936.
Plaintiffs base their right to recover upon an implied contract. They seek to recover jointly for services rendered by them incident to the operation of their deceased uncle's farm. At the time the services alleged were begun, claimants, Dewey, Roderick, Robert and Donald, were 7, 13, 14 and 16 years of age, respectively. The mother testified the sons were emancipated and whatever they earned outside the home was theirs. They lived at the farm of their parents one-half mile cross-lots from the uncle's house. *Page 414 
The uncle had been in poor health for some years and during the 11 years covered by the claim of plaintiffs he was dependent largely upon the assistance rendered by the nephews. They hauled out the manure, plowed and fitted the ground, sowed and planted the crops, helped thresh the grain and did various other things that the uncle wanted done. They at times did not use the uncle's tools. There is no proof of any agreement by claimants to enter upon a joint venture. During the 11 years covered by the claim for services, claimants never asked deceased to pay them for their services. No record was kept at any time of what services were rendered or who rendered them, and no charges made of what such services were worth. All the boys were not always at home. At times, two of them would work for the uncle, sometimes only one. One of plaintiffs was married in 1928 and another in 1933, when they left home.
Besides plaintiffs' mother and other members of the Pierson family, five witnesses were sworn in behalf of plaintiffs, who had no apparent interest in the outcome of the litigation. These five and the mother all testified to the effect the boys did most of the uncle's work, that he would often call them by telephone and ask them to come over and they would comply with his request. They also stated the uncle told them he didn't know how he would repay them for all they had done for him; that he intended to pay them but he didn't have the money. Another witness stated deceased "said he didn't have very much, but what he had he had figured the boys was entitled to it and should have it and they was going to have it some day." The quoted testimony was the substance of Robert Pierson's statements on many *Page 415 
occasions. Such statements are not shown ever to have been made to plaintiffs, or to any of them.
Plaintiffs seek to recover on an implied contract.
"Where there is no express contract a contract may be implied in fact, where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated." Miller v. Stevens, 224 Mich. 626, 632.
Plaintiffs' actions in making no request for compensation and in keeping no account or record belies any anticipation of reward. A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor. It is stretching the elasticity of credulity too far to believe these children, 7, 13, 14 and 16 years of age, respectively, were emancipated and performed the services in question for their ailing uncle upon the basis they presently expected to get pay sometime. It is much more natural to think they went to help their uncle at his request and, because of their relationship, at the suggestions of their parents, — that the services were rendered as an act of kindness to a relative who was sick. There is nothing to indicate these children began the rendition of services to their uncle on any promise of recompense, and no proof of any subsequent change in the relationship of the parties. Robert Pierson often said plaintiffs had done much to help him and when he was through with the farm they would get their pay. It is not shown that even these expressions of gratitude were known to plaintiffs, or any of them. At most, these were mere expressions of testamentary intent.
"Claimant has not, under the circumstances of this case, overcome the presumption that such services *Page 416 
rendered by a member of deceased's family or a closely associated relative are gratuitous where no express contract is shown, nor against such presumption established an implied contract, and that what is shown to have been said by deceased as to the disposition of this property goes no further than a declaration of testamentary intent.
It is well-settled law that:
" 'Particularly strong and convincing proof is required where the claim is stale, or where the services extended over a considerable period and no demand for compensation was ever made during the decedent's lifetime.' 18 Cyc. p. 533."Vandecar v. Nowland's Estate, 188 Mich. 429.
The fact plaintiffs did not live in the family of their uncle determines nothing.
"The fact that the nephew did not live under the same roof where his uncle boarded, and was therefore not a 'member of his family' in the strict sense of the term, does not have a conclusive and determining effect upon the matter."Dobbin v. Dobbin (Mo.App.), 204 S.W. 918.
In Green v. Green, 119 Ky. 103 (82 S.W. 1011), where a nephew who lived two miles away rendered services more onerous than those claimed to have been performed by plaintiffs, it was held that where the services were rendered without any intention at the time on the part of plaintiff of charging therefor, or intention or agreement at the time to pay therefor, the law would presume the services were rendered gratuitously and deny recovery.
Expressions of an intent by the uncle to compensate the nephew made in conversations with third persons during some 15 or 20 years are no part of the contract where it was not shown they were communicated to the nephew to induce him to render the services and that he performed in consideration thereof.In re Duke's Estate, 57 Misc. 541 (109 N.Y. Supp. 1087). *Page 417 
It is necessary for plaintiffs to have had the idea they were to be paid, and this can be shown only by manifestations on his part. It has been held that where one was promised orally by an uncle that if his niece was allowed to remain with him and his wife, she would never want, the terms of such a contract were incapable of being enforced because its terms were too indefinite and uncertain. Walls' Appeal, 111 Pa. 460
(5 A. 220, 56 Am. Rep. 288).
In Dobbin v. Dobbin, supra, the Kansas City, Missouri court of appeals, in affirming the trial court, approved the charge:
"The court instructs the jury that where a party voluntarily does an act or renders services for another, and there was no intention at the time that he should charge therefor, or an understanding that the other should pay, he will not be permitted to recover, because that which was intended originally as a gratuity cannot subsequently be turned into a charge."
Hertzog v. Hertzog, 29 Pa. 465, held it was error for the lower court to allow a jury to infer a contract from statements made by the party to other witnesses that he intended to pay his son for his work.
In McEwan v. Toronto General Trusts Corp., 36 Ont. Law, 244, it was held that due to the staleness of the claim it would not be heeded, especially since there was no reasonable excuse for not presenting it.
"Where a claim for services or board is first made after the decease of the alleged debtor, the presumption obtains that payment was made or that it was not intended to demand payment, and evidence to establish a claim for services against a decedent's estate not made during his lifetime must be other than mere loose declarations, and must clearly and distinctly establish a contract between claimant and decedent." 24 C. J. p. 279. *Page 418 
In Kelly's Estate, 6 Pa. Dist. 685, the court said:
" 'Claims which, though on their face accruing for years, are not presented as legal demands until after the death of the alleged debtor, come before the court discredited by the claimant's own acts, and every intendment will be made against them.' It is not material that the relationship between the parties, as in the present case, is not of itself sufficient to give rise to a presumption that compensation was not expected; the failure to ask for payment during a considerable period will create a presumption either that all demands were compensated as they arose, or that it was understood that compensation was not to be made."
The court, in Mueller's Estate, 159 Pa. 590 (28 A. 491) said:
"Claims against a dead man's estate which might have been made against himself while living, are always subjects of just suspicion."
In Estate of Miller, 136 Pa. 239 (20 A. 796), it was held that when one renders personal services to another merely upon the expectation of a legacy promised without a contract obligation, the promisee takes his chances on receiving the legacy, and, if his expectations are disappointed, he can recover nothing.
Plaintiffs' testimony falls short of establishing an implied contract. Miller v. Stevens, supra.
"Evidence to establish a contract must show something more than a mere possibility, guess or conjecture. The court is to decide upon the evidence and not guess in default of evidence."McInerney v. Detroit Trust Co., 279 Mich. 42, 49.
Stress is laid in plaintiffs' brief on the fact the nephews lived apart from their uncle and, therefore, *Page 419 
there is no presumption of gratuitous services. Mere space does not determine motive or intent. It would seem the boys began their services for their uncle in an endeavor to help him, probably counseled by their parents. Some courts have said that proximity is not a conclusive and determining factor.Hyde v. Honiter, 175 Mo. App. 583 (158 S.W. 83); Green v.Green, supra. In Woods v. Ayres, 39 Mich. 345 (33 Am. Rep. 396), it was pointed out that no implied contract to pay for services arises where they are accounted for on more likely grounds than a promise of payment.
The claim is a joint claim. There is no proof plaintiffs ever agreed among themselves they were to present a joint claim and divide the resulting proceeds. Nor is there any proof there ever was any joint contract, either express or implied. The fact that no accounts were kept at any time leads to the suspicion the implied contract was an afterthought. There is no question but the boys acted generously, prompted by the better instincts of a common humanity, in aiding their uncle. Possibly they expected his property would go to them at his death. The statements made by Robert Pierson in his lifetime show his gratitude and that he was not presently able to compensate his nephews. The most that can be said of his statements is that some day the boys were to be compensated; when he was through with his property, they might get their pay. These statements are testamentary in character and lack the formalities prescribed to establish a contract. None of these statements is shown ever to have been communicated to plaintiffs. This precludes any contention on their part that they acted on a promise of the uncle to make a will, and his failure to do so would allow them to recover the value of their services. We think *Page 420 
plaintiffs did not perform the services, for which they seek to recover, under circumstances sufficient to establish an implied contract. They failed to show they in any way heard or relied upon the uncle's expressions of gratitude. Plaintiffs' claim was properly disallowed by the commissioners on claims in the probate court.
Judgment of the trial court reversed, and case remanded for entry of judgment for defendant.
FEAD, C.J., and WIEST, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred with POTTER, J.