CLAUDE V. COSTELLO *v.* HARRY COSTELLO ET AL., EXECUTORS (ESTATE OF ANNIE G. COSTELLO)

BROWN, JENNINGS, ELLS and DICKENSON, Js.[1]

---

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued February 5—decided April 22, 1948

*Robert P. Butler,* with whom was *John B. Sullivan,* for the appellants (defendants).

*Charles M. Lyman,* with whom were *Edwin S. Thomas* and *Charles A. Watrous,* for the appellee (plaintiff).

ELLS, J.   In this action the plaintiff sought recovery upon a claim of $18,000 against his deceased

mother's estate for the reasonable value of services rendered to his father and mother from the spring of 1915 to September 24, 1940. The jury returned a verdict for $13,858 for the plaintiff, the court denied a motion to set it aside, and the defendants appealed from the ruling and from the judgment entered upon the verdict.

The written statement of claim required by General Statutes, § 4915, was duly presented to the executors, was disallowed in its entirety, and this action was brought. This statement of claim is annexed to the complaint as an exhibit. While the complaint contains but a single count, it states both an oral promise to leave a farm by will and a rendition of services under an expectation of payment. The agreement is alleged in the complaint itself in the following language: "Many times between the spring of 1915 and September of 1940, said John Costello and Annie G. Costello requested the plaintiff, who is their son, to remain on the said farm and continue to assist them in its operation and in the businesses incidental thereto, and promised the Plaintiff that if he would continue to do so during their lives they would devise and bequeath said farm to him so he should have it at the death of the survivor of them." The next allegation is that "In compliance with said requests, and in consideration of the promises herein alleged, and relying on said promises, the Plaintiff remained on said farm and rendered such services from the spring of 1915 until the 24th of September, 1940, with the expectation that he would be compensated therefor on the death of the survivor of said John Costello and Annie G. Costello, and that expectation was known to both said John Costello and Annie G. Costello when the services were rendered." It is further alleged that

John died in 1940, that Annie died in 1945, that neither devised the farm or any part of it to the plaintiff, that he has not been compensated for the services which he performed, and that his services were reasonably worth $18,000 over and above the board and living expenses received by him while living on the farm. The defendants denied the essential allegations and also pleaded in bar the three- and six-year statutes of limitation, General Statutes §§ 6010, 6005.

It thus appears that both the complaint and the statement of claim alleged promises made by the parents and that in consideration of them the plaintiff remained on the farm and "rendered such services from the spring of 1915 until the 24th of September 1940." The complaint further alleges that the plaintiff did this with the expectation that he would be compensated therefor on the death of the surviving parent and that this expectation was known to both of the parents when the services were rendered. The written claim presented to the executors further directly alleged that the plaintiff "fully carried out said agreement on his part." It must be read with the allegations of the complaint, as contended by the defendants. *Duvall* v. *Birden*, 124 Conn. 43, 47, 198 A. 255. So read, there is no merit to the defendants' claim of a variance. The sufficiency of the complaint was not challenged in the court below, and the case was tried on the two vital issues of the existence of an express contract and the plaintiff's performance of it. The defendants, having elected to try their case upon this theory, could not, upon appeal, seek relief upon another. Conn. App. Proc. § 22.

The claimed contract was an oral agreement to devise land in return for services and was unen-

forceable because of the Statute of Frauds. General Statutes § 5982; *Grant* v. *Grant,* 63 Conn. 530, 538, 29 A. 15; *Schempp* v. *Beardsley,* 83 Conn. 34, 37, 75 A. 141; *Schmidt* v. *Schaub,* 115 Conn. 208, 212, 161 A. 98. Such a contract is not, however, a mere nullity. It may avail to avoid the defense of the Statute of Limitations. If there was such an agreement as was alleged, no right of action existed during the lifetime of the parents. Upon the death of the survivor one arose, not for damages measured by the value of the land, because no action on the special contract could be maintained, but for damages measured by the reasonable value of the services rendered. As a foundation for recovering these latter damages, the special contract was material, because proof of its existence and performance would furnish a sufficient answer to the defense of the Statute of Limitations by showing that no action brought earlier could have been maintained, and would indicate that the services were rendered under circumstances which excluded the supposition that either party regarded them as gratuitous. *Schempp* v. *Beardsley,* supra, 38. It was upon the basis of these principles that the plaintiff tried his case.

It follows that if the plaintiff did not prove the express agreement and his own performance of his part of it, but did prove circumstances entitling him to recover on an implied contract arising from the furnishing of services with an expectation of payment and the knowledge of that fact by the parents, his recovery would be limited to a period of six years prior to the death of the mother. This consideration is of importance, because the verdict included compensation for services rendered prior to the six-year period.

The defendants contend that there was no evidence upon which the jury reasonably could have found that the mother entered into the alleged agreement. The only direct testimony came from the plaintiff himself. It was sufficient, if believed, to warrant the jury in finding that the father made such an agreement. He died September 24, 1940. He left the farm to his wife, and it is her estate which is now being sued. The evidence in support of the claim that she joined with her husband in making the agreement is less substantial but is sufficient to support a finding by the jury that she adopted the father's promise and made it her own. The defendants argue in their brief that "there was not a word of testimony to those conversations, save Claude's." His testimony was sufficient, if believed.

The plaintiff testified that he worked on the farm seven days a week and had three days' vacation in twenty-five years; that from 1915 to 1930 his day's work averaged fifteen hours; and that from 1930 to 1940 it averaged thirteen hours. The defendants' primary contention is that there is no evidence to show performance of the agreement on the plaintiff's part from January 1, 1941, until his mother sold the farm on April 15, 1942; that he breached and abandoned the agreement and left his mother to get along as best she could without assistance in running the farm; and that his conduct justified the sale of the farm by her. The claim of law made in the brief is that "one who seeks to recover on such an agreement for life services from one now deceased must first show either 'full performance' as the plaintiff has claimed, or a readiness and willingness to perform, or a sufficient excuse for nonperformance, as a condition precedent to recovery" (*Godburn* v. *Meserve*, 130 Conn. 723, 726, 37 A. 2d 535) and that the

plaintiff did not prove full performance or any of the factors which would excuse his failure to perform. An examination of the evidence shows that there is testimony by the plaintiff himself that he worked on the farm after January 1, 1941, although to a lesser extent than formerly; sometimes it would be for a clear month at a time, and sometimes for five or six hours in a day; he gave his mother all the help that she asked for. The agreement was "to assist" in the operation of the farm during the parents' lives. It is to be borne in mind that when the agreement was made the plaintiff was to assist in the operation of the farm, and that thereafter for many years the father was alive and shared the work with the plaintiff. Upon his death the plaintiff, under the agreement, could not be expected to do all of the work. The trial court made the following statement in its memorandum on the motion to set aside the verdict: "After careful consideration I am impelled to the conclusion that if the jury credited the plaintiff's testimony, and the question became one largely of credibility which was for the jury to decide, then there is evidence from which the jury might properly have concluded that the plaintiff did perform his part of the agreement." Our examination of the evidence leads us to a like conclusion.

The defendants further claim that a check for wages given the plaintiff by his mother on February 27, 1942, purporting to be in full payment to its date, would bar the plaintiff from any further recovery. The mother was alive and had not then sold the farm, consequently the plaintiff could not claim that he was entitled to it. He contended that only cash dealings were involved. The question was whether the check was given in full satisfaction of all unliquidated amounts due the plaintiff for services. There

was evidence from which the jury might have found that the check was tendered and received only in full satisfaction of a claim of the plaintiff for wages and that it did not concern the matter of the agreement to devise the farm by will. *Blakeslee* v. *Water Commissioners,* 121 Conn. 163, 185, 183 A. 887.

The defendants have assigned error in denying the motion to set aside the verdict as excessive. They have not pursued the claim in their brief, and we do not consider it. For the reasons stated above, we find no error in the denial of the defendant's motion to set aside the verdict.

The defendants claim that the court in its charge to the jury failed to give any standard or guide whereby they could determine that the plaintiff had or had not fulfilled the condition of performance by him. No one of the assignments which comprise the claim refers to any particular paragraph of the charge, to any request to charge, or to any objection made at the termination of the charge. Without such reference these assignments of error are not properly before us. Practice Book § 156. However, the court did give instructions which were sufficiently favorable to the defendants. It stated the plaintiff's claim that he had fully performed the agreement and the details of the defendants' claim that he had not done so, and it instructed the jury that, if they should conclude that he had failed to perform his part and that no act of the mother had brought that about or made it impossible for the plaintiff to perform, "then you could not find the plaintiff to be entitled to recover for services rendered in reliance upon the express agreement to leave the farm." The court further charged: "Of course if he proves the express agreement to leave the farm and fails to prove that he has performed

on his part, then he cannot recover." The defendants had requested a charge on the effect of the plaintiff's alleged failure fully to perform his part of the agreement. The request to charge was defective, but the court's charge was a sufficient compliance with it.

The plaintiff was a minor during the first five years of the period covered by his claim. In its instructions on the question of damages, the court charged upon the question of emancipation and told the jury, in effect, that if they found the plaintiff had not been emancipated he could not recover for any services rendered during that period. The defendants make the double claim that the court should not have charged on the subject at all, because there was no evidence of emancipation, and that the charge as given was erroneous. The contract, if made, was a sufficient indication that the parents assented that the plaintiff should have his earnings, and the charge fairly presented the law upon which the jury was to decide the question of emancipation.

The defendants have assigned error as to three rulings on evidence. None of them relates to evidence which reasonably could have affected the verdict, and even. if erroneous are not ground for reversal. *State* v. *Goldberger,* 118 Conn. 444, 454, 173 A. 216.

"The finding in a jury case is designed to present the claims of the parties as to the facts proved, for the purpose of testing the correctness of the charge and the rulings of the court." *Fitzgerald* v. *Savin,* 119 Conn. 63, 66, 174 A. 177. The finding in the present case fulfills this purpose and the assign-

ments of error directed to its correction are without merit.

There is no error.

In this opinion the other judges concurred.