IN RE ESTATE OF JOHN OLSON, DECEASED.
CARL CHRIST, JR., ADMINISTRATOR OF THE ESTATE OF
BEATRICE NELSON, DECEASED, APPELLANT, V. ANNA NELSON,
ADMINISTRATRIX OF THE ESTATE OF JOHN OLSON,
DECEASED, ET AL., APPELLEES.
95 N. W. 2d 128
Filed February 13, 1959. No. 34485.

*Jack R. Knicely,* for appellant.

*Swenson, Erickson & Westering* and *Thorpe & Babcock,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

800

CHAPPELL, J.

Plaintiff, Carl Christ, Jr., as administrator of the estate of Beatrice Nelson, deceased, appealed from the county court of Cheyenne County to the district court from the disposition of a claim filed October 25, 1957, in the estate of John Olson, deceased. Such claim sought to recover the reasonable value of services as a housekeeper allegedly rendered for John Olson during his lifetime by Beatrice Nelson, from January 1931 to April 1954, prior to her last illness and death May 22, 1954, less amounts paid to and expended for Beatrice Nelson by John Olson, who died June 20, 1957.

Plaintiff's petition on appeal, as far as important here, alleged that Beatrice Nelson during her lifetime rendered services as a housekeeper for John Olson at his request during the aforesaid period; alleged that the reasonable value thereof was a total of $31,620; admitted that John Olson had paid Beatrice Nelson and had expended for her a total of $6,913.66, to be applied thereon; and sought recovery of $24,706.34 together with interest and costs, in conformity with plaintiff's claim theretofore filed in and disposed of by the county court.

Defendants, Anna Nelson as administratrix de bonis non with the will annexed of the estate of John Olson, deceased, and a brother of John Olson who was a beneficiary under his will, executed January 11, 1957, filed an answer. Therein, as far as important here, they admitted that such a claim had been filed in the county court; admitted that $4,713.66 had been paid over to Beatrice Nelson, deceased, by John Olson, deceased, during his lifetime; and admitted that John Olson had paid the medical and hospital expenses incurred by Beatrice Nelson during her last illness and the expenses for her funeral in the sum of $2,200, which by calculation makes a total sum of $6,913.66 paid to or for Beatrice Nelson by John Olson. Such answer specifically denied each and every other allegation of plaintiff's petition, and alleged that if any services were rendered by

Beatrice Nelson for John Olson for which compensation was due, same was fully paid for during the lifetime of John Olson. The answer also alleged that Beatrice Nelson died May 22, 1954, and John Olson died June 20, 1957, and if any claim of Beatrice Nelson existed for services rendered by her for John Olson, same should have been made during his lifetime. Plaintiff's reply was a general denial.

Upon trial to a jury and at conclusion of plaintiff's evidence, defendants' motion for directed verdict was sustained, and plaintiff's claim was dismissed for insufficiency of the evidence to support a verdict for plaintiff. Plaintiff's motion for new trial was thereafter overruled, and he appealed, assigning as far as important here that the trial court: (1) Erred in sustaining defendants' motion for directed verdict; and (2) erred in overruling plaintiff's motion for new trial. We do not sustain the assignments.

There are numerous well-established rules of law which are applicable and controlling in cases such as that at bar. In Bryant v. Greene, 164 Neb. 15, 81 N. W. 2d 580, we reaffirmed that: "In an appeal from an order directing a verdict and dismissing an action, the party against whom the verdict was directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence."

In Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N. W. 551, this court held: "In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed."

In Gunn v. Coca-Cola Bottling Co., 154 Neb. 150, 47 N. W. 2d 397, this court held: "In an action where the evidence produced by the plaintiff is not sufficient to

support a verdict in his favor, it is the duty of the trial court to direct a verdict for the defendant."

As stated in In re Estate of Benson, 128 Neb. 138, 258 N. W. 60: "The burden of proof was on claimant. She was required to make a prima facie case—one in which the adduced evidence, standing alone, warranted the finding of facts to be proved." In other words, the general rule in cases where claimant seeks to recover the reasonable value of services rendered under an implied contract, the burden is upon such claimant to prove, in order to make a prima facie case, that he rendered services for defendant at his request or that they were knowingly accepted by him and the reasonable value of such services less the amount, if any, already paid therefor. In that connection also, the general rule is that: "Where an administrator pleads that a claim against him was paid in full during the life of the decedent, the burden is on him to prove that defense." In re Estate of Johnson, 144 Neb. 372, 13 N. W. 2d 412.

Be that as it may, the character and quantum of proof required of claimant in order to make a prima facie case in those situations wherein claimant and defendant or decedent have a family relationship, claimant is required to rebut by competent evidence the presumption that the services were rendered gratuitously. See In re Estate of Baker, 144 Neb. 797, 14 N. W. 2d 585, 155 A. L. R. 950. Likewise also, in cases comparable with that at bar, wherein Beatrice Nelson received stated sums periodically as wages and no claim for additional compensation as a housekeeper was made by her for 25 years during the lifetime of herself and John Olson, and none was made by the administrator of her estate until 3 years and 5 months after her death, and 4 months after the death of John Olson, courts generally hold that there is a presumption that claimant, a domestic servant, has been fully paid for her services, which presumption must be rebutted by competent evidence adduced in claimant's behalf in order to make a prima

facie case. In that connection, it is elementary that the burden of proof never shifts but the duty to go forward with and adduce evidence to overcome a presumption rests upon the party against whom the presumption arises. Reasons for the latter rule were discussed at length in Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645.

As stated in 56 C. J. S., Master and Servant, § 121, p. 563, citing authorities: "The presumption that services have been rendered gratuitously or else that they have been fully paid for is especially applicable to domestic servants * * * who make no demand for further payment until a considerable period after the termination of their services. Such a presumption may be rebutted, however, by evidence tending to show that the services were rendered with an understanding between the parties that they were to be paid for, or that no payment had been made, as, for example, where the employee demands payment and the employer promises to pay at some future time." See, also, 39 C. J., Master and Servant, § 262, p. 189; 71 C. J., Work and Labor, § 111, p. 132; 24 C. J., Executors and Administrators, § 1120, p. 401; 98 C. J. S., Work and Labor, § 48, p. 795, citing authorities.

As stated in 34 C. J. S., Executors and Administrators, § 370, p. 104, citing authorities: "Where services have been fully paid for in the lifetime of decedent, there cannot, of course, be any further recovery on that account against the estate; where claimant has received a stated sum periodically in payment of wages, * * * the presumption is against a larger allowance, unless decedent is shown to have agreed accordingly; * * *." As otherwise stated in § 370, p. 106, citing authorities: "However, a claim withheld, or not made or presented, until after the death of the person to whom the services were rendered is viewed with suspicion, or at least is not favored; the presumption obtains that payment was made or that it was not intended to demand payment;

and evidence to establish the claim must be other than mere loose declarations, and must clearly and distinctly establish a contract between claimant and decedent." See, also, 24 C. J., Executors and Administrators, § 878, p. 279.

As said in 34 C. J. S., Executors and Administrators, § 452, p. 286, citing authorities: "Particularly strong and convincing proof is required where the claim is stale, or where the services extended over a considerable period and no demand for compensation was ever made during decedent's lifetime, or where there are any circumstances connected with the claim tending to render it improbable or suspicious." See, also, In re Pierson's Estate, 282 Mich. 411, 276 N. W. 498.

As stated in 70 C. J. S., Payment, § 125, p. 337, citing authorities: "A verdict may be directed where there is no material conflict in the evidence tending to show payment or nonpayment, or where the evidence is insufficient to justify submission of the issue to the jury, or where a presumption of payment arises from lapse of time and the evidence is such that a contrary verdict would be set aside; * * *." See, also, § 126, p. 337, wherein it is said, citing authorities: "Questions as to presumption of payment and rebuttal thereof are for the jury on conflicting evidence, but where the facts are undisputed the sufficiency of the evidence to rebut a presumption of payment may become a question of law for the court."

In the light of the foregoing authorities, we have examined the record which, as summarized, discloses the following relevant and material evidence adduced by plaintiff: One witness testified that from 1929 to 1942 the going wage rate for housekeepers in an eight-room family home where he lived with his wife and four children was about $30 a month and board and room. However, he admitted that he had no experience in placing or employing housekeepers in homes where there were no children and wife as was the situation at

bar. Another witness testified that from 1942 to 1945, during the war, the going wage rate for housekeepers who stayed in homes where there were children or where there was a wife who was an invalid needing care or who was unable to do the work, was $25 to $35 or $40 a week, but after the war, from 1945 to 1954, the rate dropped back down to $25 or up to $35 a week. However, he admitted that wage rates for housekeepers depended upon ability of the employee and the particular circumstances and conditions of the employer. He also admitted that he had no experience in placing or employing housekeepers for bachelors in a situation such as that at bar.

In that connection, Beatrice Nelson, who had only a fourth-grade education, was a Swedish immigrant who came to this country in 1915. Sometime subsequently she married and lived as a housewife with her husband and their son, an only child, in their home in Omaha. Her husband died in 1926, and about harvest time in 1927 she and her teen-age son, Lawrence Nelson, visited with her sister and her sister's husband at Gurley, Nebraska. Her brother-in-law was informed by John Olson, who lived on a farm northeast of Sidney, that he was searching for a cook during the harvest and threshing season. In that situation, the brother-in-law suggested that Beatrice Nelson, his sister-in-law, who was not related to John Olson, might accept such employment. Shortly thereafter she was so employed during the harvest and threshing season of 1927 and thereafter returned to her home and employment in Omaha. During the harvest season of 1928 she returned to John Olson's farm and did the same work during that period, then went back to Omaha. In the harvest season of 1929 she again returned to John Olson's farm where she did the housekeeping and continued to do so from that time until her last illness and death May 22, 1954. John Olson and Beatrice Nelson first lived in a three-room house, having a kitchen and two bedrooms. In

June 1930, a new five-room house was constructed. It had a kitchen, living room, dining room, and two bedrooms with bath between. There they lived amicably and had friendly social relations with their neighbors and friends. Beatrice Nelson performed her duties as a good housekeeper until her last illness and death. Thereafter John Olson survived her for some 3 years, and died June 20, 1957.

In that connection, there is no evidence whatever in this record that Beatrice Nelson was not entirely satisfied with her employment by John Olson, or with the compensation she admittedly received therefor. From the harvest season in 1929 until May 22, 1954, the date of her death, a period of some 25 years, Beatrice Nelson never made any claim or demand upon John Olson for additional compensation or indicated to him or complained to any other person that he ever owed her any delinquent balance or had failed in any manner to pay her in full for her services. Nor does the record contain any indication that John Olson promised or agreed to pay Beatrice Nelson anything at a later date or that he intended to defer payment for any reason whatsoever. As a matter of fact, plaintiff's evidence at the trial affirmatively discloses that in 1950 John Olson told a close friend: "* * * that Mrs. Nelson was well taken care of." Also, in August or September 1956, John Olson told a near neighbor and close friend: "He said he had paid her and taken * * * a receipt for all wages he had paid her, and had the receipts * * * that he had paid her those wages," and "had a receipt for them." All of such statements tend to explain why Beatrice Nelson continued to be John Olson's housekeeper for 25 years without making any demand for additional compensation.

Also, after Beatrice Nelson's death on May 22, 1954, neither the administrator of her estate nor any one else ever made any claim upon John Olson that he owed Beatrice Nelson or her estate any additional compensation for her services until after John Olson's death June

20, 1957, and until the claim here involved was filed in his estate on October 25, 1957, some 3 years and 5 months after Beatrice Nelson's death. Such claim, filed by the administrator of Beatrice Nelson's estate, gave John Olson credit for having paid to or for Beatrice Nelson some $6,913.66, and as a matter of course she received board and room throughout the entire period of her employment.

Thus, because of the delay and failure of Beatrice Nelson and the administrator of her estate for 28 years and 5 months to present any claim for additional compensation until after John Olson was dead, all direct evidence of their relationship to each other, their agreement and its terms, and the fact of payment in full, had been lost. However, under the circumstances presented in this case, we clearly have a presumption of payment in full which plaintiff was required to rebut by competent evidence, but plaintiff failed to do so. Rather, evidence adduced by plaintiff, as heretofore and hereafter recited, supported the presumption that Beatrice Nelson had been paid in full during her lifetime.

In that connection, after John Olson's death, some one found some admittedly incomprehensive documents among his belongings. They were offered and received in evidence. They consisted of three loose-paper statements, three receipt books, and the first sheet of a book record containing entries made by Beatrice Nelson, which recited that she had received from other sources, or that John Olson had paid her, certain amounts upon different dates between April 5, 1931, and March 23, 1954. The three statements were identified as exhibit Nos. 2, 3, and 4. Exhibit Nos. 2 and 3 failed to disclose from whom she got a total of $241.50, or what it was paid for, or indicated that any balance was unpaid. Exhibit No. 2 shows that she got $20 from April 5, 1931, to October 20, 1936, and $125 between February 23, 1937, and May 7, 1937. Exhibit No. 3 shows that she got $96.50 March 1, without designating any year. Ex-

hibit No. 4 shows that in a "John Olson Accounting from 1931 Paid the 16 January for chickens 22.16." The three receipt books, exhibit Nos. 7 through 7n, 8 through 8i, and 9 through 9c, show that at intervals between May 5, 1948, and March 23, 1954, Beatrice Nelson received a total of $2,695 from John Olson, and no receipt shows any balance due or unpaid by him. In other words, Beatrice Nelson received an average of $37.95 a month, plus board and room during that period. The record book kept by Beatrice Nelson contained exhibit Nos. 5 and 5a. Exhibit No. 5 was the front of the first sheet, and exhibit No. 5a was the back thereof. They show that at intervals of one or two or more months Beatrice Nelson received payments from John Olson of from $30 to $260. All such payments amounted to a total of $4,420 received between November 13, 1943, and March 23, 1954, and such record sheets show no balance due or remaining unpaid by John Olson. In other words, Beatrice Nelson received an average of $35.36 a month and board and room during that period. Also, if the sum of $2,200 admittedly paid by John Olson for Beatrice Nelson's medical, hospital, and funeral expenses, is added to $4,420, then John Olson admittedly paid to or for her the sum of $6,620, which was an average of $52.96 a month and board and room during the period from November 13, 1943, to May 22, 1954, the date of Beatrice Nelson's death.

In connection with the exhibits aforesaid, plaintiff frankly admitted that they came into his possesion from his lawyer about late October or early November 1957; that there might have been other records showing payments which were not in his possession; that he never examined Beatrice Nelson's belongings and no one else claimed to have done so; that there could be other records of her accounts which were not found; and that as such administrator he had never paid any of Beatrice Nelson's medical, hospital, or funeral expenses.

It should be pointed out also that plaintiff admitted

that he was appointed administrator of Beatrice Nelson's estate at the request of his cousin, Lawrence Nelson, who was the only child and sole heir at law of his mother, Beatrice Nelson. Lawrence Nelson, who lived in Denver, Colorado, had been a truck driver some 22 years at the time of this trial, and without dispute had been bequeathed a legacy of $3,000 under the probated will of John Olson, deceased.

In the light of the foregoing evidence, and authorities heretofore cited, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiff.

AFFIRMED.