IN RE ESTATE OF JAMES W. HOUSER, DECEASED.
WILBUR HOUSER, APPELLANT, V. THEODORE R. HOUSER,
EXECUTOR OF THE ESTATE OF JAMES W. HOUSER,
DECEASED, APPELLEE.

133 N. W. 2d 618

Filed March 12, 1965. No. 35798.

402

Clinton & McNish and Guy F. Bush, for appellant.

Martin, Davis, Mattoon & Matzke, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and POLLOCK and SIDNER, District Judges.

BROWER, J.

This action originated in the county court of Cheyenne County, Nebraska, by the appellant Wilbur Houser, hereinafter at times referred to as claimant, filing within

the time allowed by the court a claim in the Estate of James W. Houser, deceased, at times designated as the decedent, in the amount of $5,000 alleged to be the reasonable value of his services after allowing all credits thereon for assisting the decedent as a hired man in farming operations in Cheyenne County, Nebraska, during the period from 1941 to 1951.

The county court found that the claim was barred by the statute of limitations and disallowed and dismissed it. An appeal was taken by the claimant to the district court for said county. To the petition of the claimant filed therein, Theodore R. Houser as executor answered admitting that the claimant had rendered certain services for the decedent. He further alleged claimant had been fully compensated therefor, denied the other allegations of the petition, and alleged the claim was barred by the statute of limitations.

At the conclusion of the evidence offered by the claimant in a trial to a jury, the executor made a motion for a directed verdict and judgment which was sustained by the trial court and the claim was dismissed. The trial court gave as its reason for the ruling that the claim was barred by the statute of limitations. His motion for a new trial having been overruled, the claimant brings his case to this court by appeal.

The claimant Wilbur Houser was both a nephew and stepson of the deceased James W. Houser, the latter having married claimant's mother on the death of her first husband who was the brother of the decedent herein and the father of the claimant. The testimony on behalf of the claimant by his wife, Pauline Houser, shows that in 1942 they were residing at Rawlins, Wyoming, with their two children. At that time claimant was employed as a dishwasher and fry cook in a cafe for which he received $4 a day, 6 days a week, and his meals. The witness testified that between Christmas and New Year's in 1942, claimant and wife were on a vacation at the home of the claimant's mother and step-

father south of Sunol and Lodgepole, Nebraska. During this vacation on an occasion a conversation occurred in the living room of the home of James W. Houser between him and the claimant in the presence of the witness and Lena S. Houser, the wife of the decedent and mother of the claimant. James W. Houser said at that time: " 'I want you to come down and help me. If you don't, we are about to lose the farm. I need help because the boys are in Service or about to go to Service.' * * * 'We are about to lose this place. I can't give you much money now, but when I die, I will remember you; the more you put into the place in help, the more you will get when I am gone.' " He then stated that "Jimmy" would come along and help them move. Claimant then answered: " 'Well, Dad, I have been thinking about going on the railroad, because it pays good wages.' " The stepfather then said: " 'Well, you better come on down and help us, because I need your help.' " The claimant then talked with his wife and they decided to come under the terms that decedent would give them a decent living and remember the claimant in his will. "Jimmy" moved them down to a farm of the claimant's mother, Lena S. Houser, a few miles from the home of the decedent. It was a half-section with only 70 acres of rough and poor tillable ground. The decedent's farm was about 1,000 acres of tillable ground and a section of pasture. At that time the decedent had three children at home, "Jimmy" aged 18, and Ted and Paul, 10 and 8, respectively. During the whole period, 1942 to February 1951, the claimant did general farm work at his stepfather's farm. He did the chores in the morning and worked until everything was finished at evening. His hours were long, particularly during spring field work and fall harvest. He was a good mechanic and took care of the farm machinery.

In 1945 claimant started shearing sheep for others which took about a month or 6 weeks starting late in

April or early May from which he earned and kept about $700 a year.

The decedent during this time gave claimant and his wife the use of two cows to milk. As their finances increased they bought cows and on leaving the farm they had eight cows and eight calves. Claimant was not paid a regular wage and Pauline Houser went to work when they first came to the farm. She worked from February until after May for $9 a week, the savings from which she used to buy chickens, and they soon had a huge flock. The decedent gave them only a little money, generally a $10 bill. He did, however, give them 400 or 500 bushels of wheat when their daughter was born, $200 at Christmas the first year they moved, and $1,000 at one time to buy a new car when claimant's family had trouble all going to church or town in the old pickup. During a discussion concerning buying a car the decedent had said to them that he could not do anything then but they were improving the place and the more the claimant and his wife put into it, the more they were going to get when he was gone. In 1950 the claimant and his wife wanted to buy three quarter-sections of land. They needed $5,000 to pay down on it and asked decedent for a loan. He had then been abrupt with them and said: " 'You just can't wait until I am gone.' " The claimant had agreed to stay only until some of the boys came back from the service. They returned "around 1946" and by 1951 there was no shortage of labor and claimant was no longer needed to help out. They parted, however, in 1951 without animosity. The deceased left a will and codicil by which nothing was left to the claimant.

Paul Misegadis testified that he was farming in the same vicinity from 1942 to 1951. He testified he had occasion to hire farm help during this period and knew what the going rate of pay for hired men was in 1942. He stated it was $150 a month and that board and room were furnished in addition to the wage. Further, he said

he was acquainted with the claimant and had worked with him, and the claimant had worked for him and he was a real good worker.

The claimant assigns error to the trial court in ruling that his claim as a matter of law was barred by the statute of limitations. He contends that unless a statute provides otherwise, the general rule is that a cause or right of action accrues, so as to start the statute of limitations running, when the right to institute and maintain an action arises, and not before. 54 C. J. S., Limitations of Actions, § 109, p. 11; Bend v. Marsh, 145 Neb. 780, 18 N. W. 2d 106; Barney v. City of Lincoln, 144 Neb. 537, 13 N. W. 2d 870. The claimant therefore maintains the statute did not start to run until the death of the decedent in 1962.

The executor's position is that the promise of payment at death is only applicable to an action for specific performance to enforce the express contract. He maintains the claimant, by bringing action on the quasi contract implied by law, cannot attach to it the provisions of the express agreement with respect to the time of payment, particularly where as here the claimant concedes the express contract cannot be enforced because of the statute of frauds. The executor maintains that in quantum meruit an action on the implied contract accrues when the labor is furnished and is barred by the statute of limitations unless an action is brought within 4 years from the termination of the services, citing section 25-206, R. R. S. 1943, and In re Estate of Baker, 144 Neb. 797, 14 N. W. 2d 585, 155 A. L. R. 950. The executor says the claimant is straddling the fence and asserting a cause of action in quasi contract and applying the statute of limitations applicable to the express promise only available in an action thereon. It is to be noted that in the case of In re Estate of Baker, *supra,* the services continued until death. Neither was there an agreement to pay at death.

In 6 Williston on Contracts (Rev. Ed.), § 2028, p. 5693,

this precise question is discussed as follows: "The rule is the same where the express contract is within the Statute of Frauds and the plaintiff's only right is quasi contractual. Thus, where there is an oral or implied promise to leave property by will in consideration of services to be rendered during the promisor's life, on failure of the employer to carry out the promise, thereby remitting the promisee to a quasi contractual claim for the value of his services, 'the Statute of Limitations begins to run against such a claim for services, based upon a quantum meruit, not as the services are rendered, but at the death of the promisor, when the obligation matures.'"

The same rule is stated in 2 Corbin on Contracts, § 329, p. 173, and in section VII of the Annotation in 69 A. L. R. 166. It is supported by the following cases: Scott v. Walker, 141 Tex. 181, 170 S. W. 2d 718; Miller v. Lash, 85 N. C. 51, 39 A. 678; Costello v. Costello, 134 Conn. 536, 59 A. 2d 520. In the last of these cases the court, in its opinion, stated: "The claimed contract was an oral agreement to devise land in return for services and was unenforceable because of the Statute of Frauds. General Statutes, § 5982; Grant v. Grant, 63 Conn. 530, 538, 29 A. 15; Schempp v. Beardsley, 83 Conn. 34, 37, 75 A. 141; Schmidt v. Schaub, 115 Conn. 208, 212, 161 A. 98. Such a contract is not, however, a mere nullity. It may avail to avoid the defense of the Statute of Limitations. If there was such an agreement as was alleged, no right of action existed during the lifetime of the parents. Upon the death of the survivor one arose, not for damages measured by the value of the land, because no action on the special contract could be maintained, but for damages measured by the reasonable value of the services rendered. As a foundation for recovering these latter damages, the special contract was material, because proof of its existence and performance would furnish a sufficient answer to the defense of the Statute of Limitations by showing that no action brought

earlier could have been maintained, and would indicate that the services were rendered under circumstances which excluded the supposition that either party regarded them as gratuitous."

It appears obvious that the claimant could not have brought action against the decedent in the latter's lifetime under the promise made even though the services had been completed more than 10 years previously when claimant's services were no longer needed. We think the general rules set forth are sound and should be applied in the case before us. The trial court erred in holding the claim was barred as a matter of law by the statute of limitations and the claimant's assignment of error to its ruling must be sustained.

Counsel for the executor point out that this court has held that a judgment will not be reversed merely because the court gave the wrong reason for the rendition thereof. Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478. The executor maintains that the evidence is insufficient to show an implied contract to pay for the services performed by the claimant and for that reason the trial court should have directed a verdict in any event. The executor stresses the relationship of the claimant to the decedent. This court stated in In re Estate of Baker, *supra:* "The general rule is that if payment for services was to be made by a conveyance or devise of property by decedent, but he refused or neglected to perform the agreement in his lifetime, and the amount to be paid for such services was not agreed upon, then the person rendering the same is entitled to recover the reasonable value thereof.

"The presumption of gratuity which is said to exist with reference to services rendered and received between closely related persons is entirely rebuttable by circumstantial as well as direct evidence, and such presumption diminishes in direct proportion to the remoteness of the degree and nature of the family relationship and the character of the duties performed.

"Such presumption is not conclusive and recovery is permitted for services rendered if the evidence shows that they were rendered under an express contract, either written or oral, to pay for them, or where there was an implied agreement or contract to pay as when the circumstances are such that a mutual intention, understanding or expectation that the services should be paid for is a reasonable and just conclusion established by clear and satisfactory evidence."

The record here clearly shows that the decedent requested the claimant to leave the employment he was engaged in, forego that which he contemplated, and to come and assist him in his farming. He sent another son to move the claimant who came and worked for the decedent during the crucial period when he was short of help. It appears that the services were rendered under circumstances which would exclude the supposition that the decedent or the claimant would regard them as gratuitously rendered. The jury could conclude from the evidence before it the claim was not barred by the statute of limitations, and the record in the case as it now appears contains sufficient evidence to submit the questions concerning the decedent's liability for the claimant's services and the reasonable value thereof to the jury under proper instructions.

It follows that the judgment should be reversed and the cause remanded for a new trial in accordance with this opinion.

REVERSED AND REMANDED.

SIDNER, District Judge, dissenting.

At the close of the plaintiff's evidence herein the defendant moved for a directed verdict, setting forth several grounds. One ground was that the action was barred by the statute of limitations. The majority opinion holds that the action as brought was not barred. With this and all other statements of law in that opinion I concur.

It is with this in mind that a review of the evidence is necessary as presented in this case to determine

whether defendant's motion for a directed verdict on grounds that the evidence is insufficient to establish a legal contract upon which a claim can be based should be sustained.

Under the facts in this case, plaintiff, who is the nephew and stepson of decedent, was working in a cafe as a dishwasher. Decedent had a large family, consisting of children by a former marriage, children by his present marriage to the mother of the claimant, and a group of children that fell in the same class of the claimant, being nephews and nieces and stepchildren of the deceased.

There is only one piece of evidence to substantiate the claim of any contract. This is the statement of claimant's wife, and she is the only witness who testifies in the case as to any material element. She states that the decedent asked the claimant to come and help him operate his farms during the war years when he was short of help, and that on that basis he would promise to remember claimant in his will. Claimant moved onto his mother's farm and remained there for a period of 10 years from 1941 to 1951. During this time he maintained a living, educated his children, learned the trade of sheep shearing, and spent, during the last 5 years they lived on the place, much of his time on this occupation of his own. Only once during the time that they lived on the farm did the claimant ask for more money than had been given him by the decedent, and he was given the same answer, that he would be remembered in the will.

In 1951 claimant left because there were too many children back on the farm. He had enough cattle and was furnished enough machinery for his use by the decedent. He was able to commence his own farming operations. No claim was ever made from that date until decedent's death in 1962, and when claimant was left out of the will this claim was filed.

As stated in the syllabus in this case in the majority

opinion, there is a presumption of gratuity which is said to exist with reference to services rendered between closely related persons, and this is in proportion to the degree and nature of the family relationship. Also, that in order to overcome such presumption there must exist clear and satisfactory evidence. Starting with these legal propositions, and the facts as set forth above, the majority opinion cites the case of In re Estate of Baker, 144 Neb. 797, 14 N. W. 2d 585, 155 A. L. R. 950, in support of its conclusion. The Baker case differs from the one at hand in that as to the contract for services there was ample proof by letters, telegrams, and so forth of the promise to pay. Services were rendered up to the date of the death of deceased, the person rendering the services was a nephew who left a profitable business to operate a large business enterprise, and this was not a contract to will, it was a contract for pay for services.

We think that the facts in this case are much more similar to the case of In re Estate of Olson, 167 Neb. 799, 95 N. W. 2d 128. The court there states that where a claim was not made or presented until after the death of the person for whom the services were rendered, and a long period of time has elapsed, the claim should be viewed with suspicion, and evidence to establish a claim must be other than mere loose declarations and must clearly and distinctly establish a contract between the claimant and the decedent. Particularly strong and here is a relationship of father and son. We have a stale or either the services extended over a considerable period of time and no demand for compensation was ever made during decedent's lifetime.

What we seek to do here is to set aside a written instrument—the will of the decedent, and more especially, one which has been executed with formality. To do so, we need clear and convincing evidence. What we have here is a relationship of father and son. We have a stale claim. We have no supporting evidence by any outsider as found in the Baker case, *supra*.

As the legal proposition is stated in the Olson case, *supra,* before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed.

These facts would seem to bring this under the rule that there are literally no facts from which a jury could find that there was clear and convincing proof of the contract to will.

Therefore, it is my conclusion that the judgment of the district court is correct and it should be affirmed.

POLLOCK, District Judge, dissenting.

I respectfully dissent. It is a well-established rule that proof of the terms of an oral contract to devise or bequeath must be clear, satisfactory, and unequivocal. Dunbier v. Stanton, 170 Neb. 541, 103 N. W. 2d 797; Gerdes v. Omaha Home for Boys, 166 Neb. 574, 89 N. W. 2d 849; McLaughlin v. Heath, 164 Neb. 511, 82 N. W. 2d 533; Drew v. Hawley, 164 Neb. 141, 82 N. W. 2d 4; Wyrick v. Wyrick, 162 Neb. 105, 75 N. W. 2d 376; O'Neal v. First Trust Co., 160 Neb. 469, 70 N. W. 2d 466; Eagan v. Hall, 159 Neb. 537, 68 N. W. 2d 147.

There was no proof of mutual assent, of a meeting of the minds of the parties as to the exact terms and conditions of the contract. In my opinion, mere proof of an agreement to remember one in a will in an unspecified manner is too indefinite, and the trial court properly directed a verdict.