JOHN D. GERDES ET AL., APPELLANTS, V. THE OMAHA HOME FOR BOYS ET AL., APPELLEES.

89 N. W. 2d 849

Filed May 2, 1958. No. 34364.

*Lyle Q. Hills,* for appellants.

*Mecham, Stoehr, Rickerson & Sodoro* and *Crossman, Barton & Quinlan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The object of this litigation is to secure specific performance of an alleged oral contract by which appellants claim Leo G. Butler and Margaret B. Butler obligated themselves to give their property by wills to appellants.

The following is the substance of the petition of appellants: Leo G. Butler and Margaret B. Butler, husband and wife, by an oral agreement made August 19, 1950, with appellants bound themselves to devise and bequeath all their property, except five nominal legacies, to appellants in consideration of their agreeing to devise

all their property to Leo G. Butler and Margaret B. Butler with the exception of two nominal legacies. In performance of the agreement each of the parties thereto on the date stated made a will. A copy of each of the wills is attached to and made a part of the petition. The wills were each prepared by the same lawyer, made at the identical time, attested by the same witnesses, and each will was deposited in the county court of Douglas County. Margaret B. Butler died during June 1956. Leo G. Butler was named as the only beneficiary of the will of his wife but no proceedings were had for the probate of her will or for the administration of her estate. Leo G. Butler, on or about January 15, 1957, for the purpose of defrauding appellants, made a second will and thereby and therein revoked the will he made on August 19, 1950, and thereby violated the oral agreement made with appellants on August 19, 1950. They did not learn of the second will of Leo G. Butler until after his death late in January 1957. Appellants in good faith performed the oral agreement of August 19, 1950. Leo G. Butler by the terms of his second will gave $15,-000 in cash to The Omaha Home for Boys, one of the appellees, and the residue of his property to Fred Butler, his brother, one of the appellees. The gifts made by the second will and the claimed rights of O. M. Campbell as executor of the will constitute a cloud upon the title of appellants to the property owned by Leo G. Butler at the time of his death for the removal of which appellants have no adequate remedy at law. Appellants asked for specific performance of the oral agreement.

The copy of the will of Leo G. Butler dated August 19, 1950, attached to the petition, provided for the payment of his debts and the expenses of his last illness and burial and subject thereto gave all his property to his wife, Margaret B. Butler; contained a statement that the will was made as a result of an understanding and agreement that his wife would make a like will; pro-

vided that in case of the death of the testator and his wife in a common disaster or if his wife should predecease him, a gift of $1 was made to Fred Butler and the residue of the property of the testator was given to appellants equally or in case of the death of either before the death of the testator, then the survivor should take the residue and if appellants predeceased the testator the residue was given to the Masonic Boy's Home of Omaha, Nebraska; and provided for the appointment of his wife as executrix if she survived the testator, otherwise Lyle Q. Hills was named executor and he was appointed attorney for the representative of the estate of the testator. This was the pattern of each of the wills made August 19, 1950, and they were identical except as to the name of the person making the will, the names of the beneficiaries, and the person designated as executor. The will of Leo G. Butler made January 15, 1957, gave The Omaha Home for Boys $15,-000 in cash; gave Fred Butler, brother of the testator, the residue of his estate; and appointed O. M. Campbell executor of it.

The answer of O. M. Campbell denied the statements of the petition. The answer of Fred Butler denied the averments of the petition except it admitted the residences of the parties and the corporate status of The Omaha Home for Boys as alleged in the petition and that Leo G. Butler made a will on January 15, 1957, which revoked all prior wills made by him. The new matters of the pleading of Fred Butler were: The probate of the will of Leo G. Butler made January 15, 1957, and the appointment and qualification of O. M. Campbell as executor thereof; the execution of a written contract on August 19, 1950, by Leo G. Butler and Margaret B. Butler and by appellants, together with an addendum thereto, copy of which is made a part of the answer, by virtue of which appellants obligated themselves to make wills in favor of Leo G. Butler and Margaret B. Butler but they or either of them did not agree to

make a will or wills in favor of appellants; the written contract of August 19, 1950, made a part of the answer, was a result of negotiations between the parties thereto and evidenced the complete agreement in reference to the subject matter of the negotiations, was duly signed and delivered by the parties, and constituted the exclusive medium of ascertaining the agreement between the signatory parties; and that Leo G. Butler and Margaret B. Butler fully performed all the terms of the contract required to be performed by them. The prayer of the answer was dismissal of the action of appellants. The written contract of August 19, 1950, made a part of the answer of Fred Butler, will be later set out and discussed herein.

The Omaha Home for Boys by an allegation in its answer denied the statements of the petition and asked that the case be dismissed.

The reply of appellants to the answer of Fred Butler was a denial and an admission that appellants and Leo G. Butler and Margaret B. Butler made the contract, a copy of which is attached to the answer of Fred Butler.

The trial court found generally for appellees and against appellants and that Leo G. Butler and Margaret B. Butler, or either of them, did not promise to make a will in favor of appellants or either of them. A judgment of dismissal of the case was rendered and the motion of appellants for a new trial was denied. This appeal presents the record for trial de novo in this court.

Appellants were the owners of residence property at 1724 North Sixtieth Street, the legal description of which was Lots 245 and 246 of Morningside Addition, Douglas County, where they had resided since December 26, 1940. They were each 70 years of age on August 19, 1950, at the time of the transaction concerned in this litigation. Leo G. Butler was then 61 years of age and Margaret B. Butler was then 47 years of age. These four persons had been acquainted and friendly for about 20 years. John D. Gerdes was disabled by a back condition.

Neither he nor his wife, Blanche Gerdes, were gainfully employed and they had no income except the amount contributed to them as old age assistance. Leo G. Butler and Margaret B. Butler were each gainfully employed and continued to be until their respective deaths. Blanche Gerdes testified that there was an old age assistance lien on the property of appellants. She further testified: "That is the only way we could live, and that is why we took on these other doings because we could not get along when he was crippled, and we could not get enough from old age assistance to help us out, so we decided to do something else with our place."

It was under these necessitous and distressing circumstances that appellants engaged in negotiations with Leo G. Butler and Margaret B. Butler, hereafter referred to as the Butlers or by their respective names, concerning the residence property and the use of it on some basis that would afford the appellants the relief and assistance which they imperatively required. Appellants had previously consulted Lyle Q. Hills who represents them in this litigation. They had known him for some time previous to the transaction between appellants and the Butlers. The latter had not had contact with Lyle Q. Hills, who will be referred to as Hills, or his office. Appellants and the Butlers went to the office of Hills and the former introduced the latter to the persons who were there. Appellants and the Butlers had negotiations in which Hills participated in reference to the residence property of appellants and the use and occupancy of it including the matter of the Butlers occupying the house with appellants, remodeling it, and paying the expenses of the utilities and the household expenses. The negotiations were continued on two other occasions when the appellants and Butlers were at the office of Hills and consulted with him about the matters concerning the use and occupancy of it. Hills prepared the four wills, exhibited as a part of the petition, and a written contract concerning the im-

provement and occupancy of the house. These documents were submitted to the parties for their information, examination, and study and when they later returned to the office of Hills on August 19, 1950, that being the fourth occasion of negotiations concerning the matter, the documents were signed. The wills were signed and attested. The written contract was signed, the signatures witnessed, and the contract was delivered in the sense it was to be effective without condition or qualification.

Appellants were named and described in and executed the contract as parties of the first part and the Butlers were named and described in and executed the contract as parties of the second part. The written contract, omitting the formal parts of it, the signatures of the parties to it, and the signatures of the attesting witnesses, expresses the following:

"NOW, THEREFORE, it is agreed by and between the parties as follows, to-wit:

"THAT parties of the second part shall place certain improvements on the property of parties of the first part, making it suitable to the parties, said improvements to be agreed upon by and between the parties; and after said improvements are made parties of the second part will occupy part of the dwelling located upon said premises as their home and parties of the first part will occupy the remainder of said dwelling located upon said premises, as their home.

"IT IS FURTHER AGREED by and between the parties that in consideration of making said premises their home, parties of the second part, in addition to improving said dwelling located upon said premises as aforesaid, will pay all taxes and upkeep upon the entire dwelling located upon said premises and will furnish all heat and water required in said dwelling upon said premises and will in addition pay to said parties of the first part the sum of Forty and No/100 ($40.00) Dollars at the beginning of each month and upon the first

day of each month thereafter, during the lifetime of said parties of the first part, or either of them.

"IT IS FURTHER UNDERSTOOD AND AGREED that said payment of taxes and said payment of the sum of $40.00 per month and the expense of furnishing heat and water for said dwelling shall commence upon the entrance of said parties of the second part upon said premises and upon their commencement of occupation of said premises as their home.

"IT IS FURTHER AGREED by and between the parties that the said John D. Gerdes and Blanche Gerdes, parties of the first part, in consideration of the above performance by parties of the second part, shall allow said parties of the second part to occupy said premises with said parties of the first part, as their home; and said occupation will be without payment of rent therefor, and parties of the first part hereby covenant with parties of the second part that they will not sell or dispose of said property and shall provide and declare and make a Will, giving said parties of the second part, said property, upon the termination of the life of said parties of the first part."

This contract was acted upon and fully performed by the parties to it. Its validity and integrity have not been questioned. The record shows no attack made on it for fraud, mistake, ambiguity, or other defect or infirmity. The parties to the contract of August 19, 1950, executed another written contract in October 1953, sometimes referred to as an addendum to the contract of August 19, 1950, concerning the sale of part of Lot 245 of Morningside Addition, Douglas County, a portion of the residence property owned by appellants, and therein they expressly confirmed and ratified the written contract of August 19, 1950, by these words: "IT IS FURTHER AGREED by and between the parties hereto that the provisions of the agreement executed on the 19th day of August, 1950, same being attached here-

to, shall remain in full force and effect in all other respects between the parties."

The cause of action pleaded by appellants was based on an oral agreement said to have been made on August 19, 1950, the date of their written contract, by which they allege the Butlers obligated themselves to devise and bequeath all of their property, except five legacies of $1 each, to appellants in consideration of their agreement to devise all of their property, except two legacies of $1 each, to the Butlers. Appellants at the trial offered their testimony and the testimony of another in an obvious attempt to prove an oral agreement of the kind and effect which they had alleged in their petition. This testimony was concerning conversations and statements of the parties during the negotiations preceding the execution of the written contract of the parties on August 19, 1950. If this testimony was not for that purpose it was wholly irrelevant. Appellees made correct, timely, and repeated objection to the testimony. The trial court admitted it, sometimes with the assurance that he would only consider competent evidence in his consideration and decision of the case. The presumption is that the trial court disregarded incompetent evidence in reaching its conclusion in the case, and this court, because of the character of the cause, will consider only the evidence properly before it. Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645. This testimony was incompetent and improperly admitted. The written contract, the subject matter of the transaction, is complete and the only competent evidence of the agreement of the parties. Appellants may not extract from their negotiations an understanding which they claim was arrived at by the parties concerning reciprocal wills and frame a cause of action thereon independent from and in disregard of their written contract subsequently made which concerns the subject matter of the negotiations. The agreement of the parties may not be thus fragmentized.

Whatever was said by the parties concerning the making of wills by them was a part of the negotiations concerning and relating to the subject matter of their written contract and any oral understanding of the parties to the contract concerning it should have been, and to be effective was required to be, included in the written contract.

In Barkalow Bros. Co. v. English, 159 Neb. 407, 67 N. W. 2d 336, this court said: "It has long been the law of this state that if persons to a transaction have put their engagement in writing in such terms as import a legal obligation without uncertainty of the object or extent of the engagement, it is conclusively presumed that the entire engagement of the parties and the extent and manner of their undertaking have been reduced to writing, and any parol agreement is merged in the written contract and testimony of prior or contemporaneous conversations is incompetent."

Bitler v. Terri Lee, Inc., 163 Neb. 833, 81 N. W. 2d 318, declares: "If negotiations between parties result in an agreement in reference to the subject matter thereof and if they reduce their agreement to writing, execute, and deliver it, the writing, in the absence of fraud, mistake, or ambiguity, is the only competent evidence of the contract." In the opinion in that case this court quoted with approval the following from Annotation, 33 A. L. R. 2d 968: " 'All oral negotiations or stipulations between the parties, preceding or accompanying the execution of the written instrument, are regarded as merged in it, and the instrument is treated as the exclusive medium of ascertaining the agreement of the parties to it. * * * The reason for this rule is that it is only reasonable, where parties have entered into a written agreement, to suppose that they have introduced into the instrument every material term and circumstance; and, consequently, all parol testimony of conversations made by either of them, whether before or after, or at the time of, the completion of the contract,

will be rejected. * * * With respect to the first-mentioned theory (adding by parol evidence to the contract evidenced by writing), it has been well said that the rule forbids to add by parol where the writing is silent, as well as to vary where it speaks, that generally it will be presumed that the parties have introduced into the written contract every material item and term, and that parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular feature to which the parol evidence is directed.' "

Master Laboratories, Inc. v. Chesnut, 157 Neb. 317, 59 N. W. 2d 571, states the rule in this manner: "When the written agreement shows a complete legal obligation, without uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included therein. The fact that a point has been omitted which might have been embodied therein will not open the door to the admission of parol evidence in that regard. * * * The parol evidence rule is not merely one of evidence, but is a rule of substantive law, which declares that certain kinds of facts are legally ineffective, and forbids such facts to be proved at all."

Hansen v. E. L. Bruce Co., 162 Neb. 759, 77 N. W. 2d 458, states: "In the absence of fraud, mistake, or ambiguity a written agreement is not only the best evidence but the only competent evidence as to what is the contract of the parties. * * * A written contract expressed by clear and unambiguous language is not subject to interpretation or construction. * * * The intention of the parties to a written contract expressed by clear and unambiguous language must be determined from its contents. * * * The entire contract must be regarded with a conscious effort to give effect to every part of it without disproportionate emphasis upon one to the neglect of other provisions." See, also, Hafeman

v. Gem Oil Co., 163 Neb. 438, 80 N. W. 2d 139; Boettcher v. Goethe, 165 Neb. 363, 85 N. W. 2d 884.

The circumstances of this case make it impossible for it to escape the reach and effect of the doctrine expressed and sustained by the above authorities.

The testimony of appellants concerning conversations and transactions with the Butlers was also incompetent, should have been excluded, and will be disregarded in this court because it was given by parties who had direct legal interest in the result of the litigation in which the adverse parties were representatives of deceased persons and there was no waiver of the bar of the statute. § 25-1202, R. R. S. 1943; Colbert v. Miller, 149 Neb. 749, 32 N. W. 2d 500; Fischer v. Wilhelm, 140 Neb. 448, 300 N. W. 350; Johnson v. Omaha Loan & Bldg. Assn., 128 Neb. 37, 257 N. W. 370; Broeker v. Day, 124 Neb. 316, 246 N. W. 490.

Appellants speak of interpreting contemporaneous instruments as though they were one. The correct doctrine in this regard means that if there is a provision in one instrument affecting a provision of another, they will be given effect as between the parties and all who are charged with notice so that the whole agreement actually made may be determined and effectuated. It does not mean that a provision of one document is imported bodily into another contrary to the intent of the parties or the express provision of the latter. They may be intended to be separate writings though made at the identical time by the same parties and to provide for entirely different things. The statement that contemporaneous instruments may be treated and interpreted as one means only that this will be done when it will effectuate the intention and if the provisions of the two instruments if put together will not be incompatible. The court may not do violence to a complete, unambiguous contract by consolidating it with another writing if the effect of doing so would be to avoid an essential part of the contract. If contracts or writings are

in effect independent they should not be construed together even though the same parties and the same subject matter may be concerned. Two instruments relating to distinct subjects or things should not be construed together to determine the intent and transaction of the parties though made at the same time and though they relate to the same transaction because both must have the same object in order to be taken together as evidencing the same thing.

In Thorp v. Mindeman, 123 Wis. 149, 101 N. W. 417, 68 L. R. A. 146, 107 Am. S. R. 1003, the court said: "Construing together simply means that, if there be any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves and all persons charged with notice, so that the intent of the parties may be carried out, and that the whole agreement actually made may be effectuated. This does not mean that the provisions of one instrument are imported bodily into another, contrary to the intent of the parties. They may be intended to be separate instruments, and to provide for entirely different things, as in the very case before us."

Brest v. Maenat Realty Co., 245 Wis. 631, 15 N. W. 2d 798, says: "It is quite true that when instruments are executed and delivered at the same time they will be construed together in order to determine the nature of the transaction and the intent of the parties. But this is not true when the two instruments, though both relating to the same transaction, relate to two distinct subjects or provide for two distinct things. * * * To be taken together as evidencing the same thing the two instruments must not only both relate to the same transaction, but they must both have the same object."

The doctrine presently discussed does not aid the case of appellants. If the written contract of August 19, 1950, made by the parties is construed with the four separate wills made at that time, this does not in any

manner affect the conclusion previously expressed herein that the evidence of appellants intended to establish an oral agreement of the Butlers to make wills giving their property to appellants was and is incompetent and must be disregarded. The result is that there is no competent evidence of such an agreement by the Butlers or either of them. The wills were separate instruments of the four persons who made them. There was no provision that any of them should be irrevocable. There is no reference in either of the Butler wills to the wills of appellants or vice versa. Each will was deposited in the county court as a separate and distinct document, was therein identified by a separate number, and a separate receipt was issued to each maker. The record contains no competent evidence of any agreement or arrangement for reciprocal wills by appellants and the Butlers. The circumstances of this case make it almost inconceivable that there could have been an agreement for the Butlers to give their property by will to appellants and that such an important matter was omitted from the carefully prepared and complete written contract after repeated negotiations and with the aid of competent legal counsel. This is especially true because the contract was developed and prepared by the attorney who had acted in other matters for appellants. They were his clients. He by every consideration would have been alert to their rights and protection. The record is convincing that there never was such an agreement as is sought to be enforced herein. In any event it is not established by clear, satisfactory, and convincing evidence.

Diez v. Rosicky, 145 Neb. 242, 16 N. W. 2d 155, contains language appropriate to this case: "It is evident that the making of a will whereby all of testator's property is left to his wife is not of itself evidence of the existence of a contract between the testator and his wife. Nor is it evidence of part performance of a contract in the absence of other evidence indicating clearly

that it was made pursuant to such an agreement. We do not think the record shows by clear, definite, satisfactory and unequivocal evidence that a contract was made. Declarations of intention or of the wishes of the parties do not tend to support any such conclusion."

In Eagan v. Hall, 159 Neb. 537, 68 N. W. 2d 147, the court states: "In the case at bar an oral contract was not established by clear, satisfactory, and unequivocal evidence. In fact, there was no evidence in the record tending to support any such agreement. In addition thereto, there is no evidence of part performance which imports the existence of the pleaded oral agreement and no other. To meet the requirements of the rule the act alleged to constitute part performance must be such that its existence can be accounted for only by the existence of the pleaded oral agreement. It must refer to, result from, or be in pursuance of the oral agreement sought to be enforced, and not from any other relation. Such was not the case here." See, also, Wyrick v. Wyrick, 162 Neb. 105, 75 N. W. 2d 376; Drew v. Hawley, 164 Neb. 141, 82 N. W. 2d 4.

The judgment of the district court should be and it is affirmed.

AFFIRMED.