OMAHA PUBLIC POWER DISTRICT, a Corporation, Appellant,

v.

The EMPLOYERS' FIRE INSURANCE COMPANY, a Corporation, Appellee.

No. 17413.

United States Court of Appeals Eighth Circuit.

Feb. 19, 1964.

Hird Stryker, Omaha, Neb., for appellant with Tracy J. Peycke, Omaha, Neb., on the brief.

G. L. DeLacy, Omaha, Neb., for appellee.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Plaintiff brought an action in contract in federal district court for enforcement of a performance bond given by defendant as surety for a third party's principal obligation. Jurisdictional requirements of diversity of citizenship and controverted amount in excess of $10,000.00 were met. Plaintiff seeks review of the dismissal of its complaint on the merits by the trial court, sitting without a jury.

This appeal raises the sole question of interpretation of the underlying, principal obligation, and all facts pertinent thereto have been stipulated by the parties. Plaintiff, Omaha Public Power District, is a public utility company incorporated within the State of Nebraska. In May of 1958, the company desired to engage an independent contractor to dismantle and remove certain power lines situated in the City of Omaha in order to make way for their replacement. An intermediary put plaintiff in contact with one Charles W. Kirby, a demolition contractor doing business as Audio Products in Denver, Colorado. Following negotiations for the proposed job, plaintiff and Kirby executed a formal contract on June 30, 1958. In essence, the agreement's consideration provided that Kirby would purchase and remove some ten miles of power lines, paying plaintiff $2500.00 at or before commencement of the work for the rights to most of the salvaged materials.

Under the terms of this agreement, Kirby was also required to obtain a performance bond insuring the work's completion and certain liability insurance, as well as workmen's compensation insurance acceptable under the laws of Nebraska.[1] As proof of his procurement of the required insurance, Kirby further agreed:

> "To submit to (plaintiff) a certified copy of these insurance policies, or a certificate of insurance, for inspection before commencing the work and *this contract shall not become effective until such policies are in full force and effect.*" (Emphasis supplied)

During negotiation of the principal contract, Kirby had acquired on May 28, 1958 a performance bond from The Employers' Fire Insurance Company, a Massachusetts corporation and the named defendant in this action.[2] Pursuant also to his agreement, Kirby furnished plaintiff on July 8, 1958 a certificate of general liability insurance.

However, on July 21, 1958, plaintiff received correspondence from Kirby's attorneys informing them that their client had suffered extensive, financial loss resulting from an accident to an employee on another job. Plaintiff was further advised that Kirby, as a result thereof, was on the verge of bankruptcy and unable to raise the $2500.00 payment called for in their contract, maintain the general liability insurance, cancelled because of the accident, or purchase the yet unobtained workmen's compensation or automobile liability insurance.

Due to Kirby's announced inability to perform, plaintiff made written demand upon the defendant to undertake performance of Kirby's obligation by negotiation of a contract with another contractor from a furnished list of solicited bids. Defendant declined, whereupon plaintiff accepted the lowest bid of $18,500.00 and advised defendant reimbursement would be sought upon completion of the work in a suit for damages.[3]

---

1.   "AGREEMENT OF SALE

"*This Agreement of Sale* made this 30th day of June, 1958, between OMAHA PUBLIC POWER DISTRICT, * * * hereinafter called 'District' and CHARLES W. KIRBY, * * * doing business under the name of AUDIO PRODUCTS, hereinafter called 'Purchaser'.

\*        \*        \*        \*        \*

"In consideration of the promises of District * * * Purchaser does covenant and agree as follows:

\*        \*        \*        \*        \*

"10. To furnish, at its expense, a Performance Bond in the amount of $25,000.00, to be approved by the District to assure satisfactory performance of the work to be done.

\*        \*        \*        \*        \*

"12. To carry and keep in full force and effect at all times during the term of this agreement, at his own expense, Workmen's Compensation Insurance, General Liability Insurance, and Automobile Liability Insurance in reliable insurance companies authorized to do business in the State of Nebraska. * * *

\*        \*        \*        \*        \*

"This insurance shall be written and maintained *to protect Purchaser against* liability for damages and expenses arising from damage to property, or injury or death of person or persons arising in any way out of or in connection with work provided for hereunder.

"13. To submit to District a certified copy of these insurance policies, or a certificate of insurance, for inspection before commencing the work and this contract shall not become effective until such policies are in full force and effect."

\*        \*        \*        \*        \*

2.   Although this bond provided that it was given to secure the performance of "a certain contract in writing bearing date August 15, 1958", the trial court found, and it is uncontested on this appeal, that despite the discrepancy in the bond's date and that of the Agreement of Sale dated June 30, 1958, the former instrument expressly incorporated the formal contract reduced to writing on June 30, 1958.

3.   Plaintiff sought damages in the amount of $19,750.00 representing $18,500.00 paid another contractor to perform the job plus $1,250.00, one-half of the purchase price under Kirby's contract. Plaintiff had an understanding with the party who originally put plaintiff in contact with Kirby to pay him the remaining $1,250.00 for his efforts.

Defendant submits that because the law of suretyship imposes no greater liability upon the surety than that of the principal obligor, enforcement of its performance bond is dependent upon the existence of an effective, underlying obligation, Niklaus v. Phoenix Indemnity Co., 166 Neb. 438, 89 N.W.2d 258 (1958), which in the instant case never ripened into a binding agreement. It is defendant's contention this principal contract contained a condition precedent to its existence which never occurred when the principal obligor failed to procure the requisite insurance. Conversely, plaintiff argues that the questioned provision was merely a condition to proceeding with the work, but not a condition to the existence of an enforceable binding contract.

■ The principal contract provided, and we concur, that the substantive law of Nebraska controlled its interpretation, 28 U.S.C.A. § 1652; Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). An exhaustive research of Nebraska's jurisprudence, as well as that of its sister jurisdictions, has failed to uncover a case on all fours in which a contractual provision such as the one in controversy has been judicially construed. Therefore, logical interpretation of the words chosen in ascribing to them the parties' intended meaning coupled with analogical application of Nebraska contract law evincing the governing principles of construction are essential to disposing of the issues before this Court.

■ The law of Nebraska is consistent with the recognized definitions which hold that a condition precedent is either a condition which must be performed before a contract becomes binding upon the parties to it or must be fulfilled before a duty arises to perform the obligations of an already existing contract. O'Brien v. Fricke, 148 Neb. 369, 27 N.W.2d 403 (1947); Evans v. Platte Valley Public Power & Irr. Dist., 144 Neb. 368, 13 N.W.2d 401 (1944).

■■ Nascence of the instant agreement occurred upon the parties' execution of the principal contract embodying their exchange of bilateral promises. On June 30, 1958, Kirby agreed to purchase for a fixed consideration certain power line equipment and thereafter remove same in return for the utility company's promise to relinquish title to him of some of the materials so removed. Contained within this contract were the provisions requiring Kirby to obtain certain insurance, specifically for his own protection, against various hazards likely to occur upon commencement of the work. The crucial paragraph immediately following the insurance provisions requires in part that Kirby furnish the utility company with proof of the insurance's procurement before commencing work. Had this been all the provision demanded of Kirby, it is susceptible of interpretation that the parties intended Kirby's procurement of the insurance for his protection alone a condition subject of waiver and inessential to the duty of performance of the agreement's bilateral promises supported by otherwise valid consideration. However, this was not the case. This proviso was further qualified with the stipulation, *"This contract shall not become effective until such policies are in full force and effect."* Assigning the parties' words their plain and unequivocal meaning, this modifying clause is subject to but one interpretation. The parties intended binding performance of their obligations under the existent contract to be contingent upon occurrence of the described event, a fact to precede immediate performance other than the mere lapse of time. See Restatement, Contracts § 250 (1932). Consequently, it would be improperly stated as defendant contends to deny that a contract, once the terms were agreed upon, ever came into being for failure of the condition precedent to occur. Although we agree with plaintiff that the questioned provision was not a condition precedent to the existence of the contract, it was a condition precedent to performance of the work. Plaintiff is nevertheless pre-

cluded from entertaining a suit for breach of contract for failure of Kirby to perform in the absence of the condition's occurring and impelling absolute performance of the parties' promises.

The latest expression of this rule by the Nebraska Supreme Court may be found in the case of Metschke v. Marxsen, 176 Neb. 240, 125 N.W.2d 684 (1964), decided subsequent to submission of the instant case. There, it appears that the parties orally agreed that binding performance of their conditional sales contract was contingent upon occurrence of a preliminary event—downpayment of a fixed amount by the vendee. Failure to make the downpayment necessitated the court to find the existent contract was unenforceable when this agreed upon condition precedent did not occur.

The emphatic wording of the written condition precedent in the contract at bar makes an even stronger case for our applying the rule in Metschke. See also 5 Williston, Contracts, §§ 666, 666A (3rd Ed. 1961).

Plaintiff argues that to allow the effectiveness of the contract's performance to remain in a suspensive state until the requisite insurance was obtained would work an impracticality on the parties, because they would be precluded from taking the necessary preparatory action to performance such as deenergizing the power lines, movement of equipment to the jobsite, assembly of a work force, and implementation of plans for the lines' replacement. However, for us to hold otherwise to reach these desired results would derogate from the plain meaning of the parties' agreement and be tantamount to this Court's rewriting, rather than enforcing, the unambiguous expression of the parties' will. The contract plainly means what the contract plainly says.

Plaintiff also takes the position that the parties' failure to include the disputed provision in the parties mutual covenants which appear as the epilogue to the instrument negates their intention to condition overall performance upon its occurrence. We cannot agree. Again, the clarity of the language selected by the parties must control as indicative of their intent in preference to whatever inferences may be drawn from that language's location within the agreement.

█ And finally, plaintiff submits that because Kirby failed to obtain the necessary insurance in compliance with his undertaking, he, nor defendant, may rely upon this default as a defense to performance of the contract. It is true that a promisor may not prevent, hinder, or render impossible the occurrence of a condition precedent or the performance of a return promise in order to relieve himself of the obligation to perform. Schinstock v. Butterfield, 141 Neb. 877, 5 N.W.2d 86 (1942); Householder v. Nispel, 111 Neb. 156, 195 N.W. 932 (1923); Gulf Oil Corp. v. American Louisiana Pipe Co., 282 F.2d 401 (6th Cir. 1960); Restatement, Contracts, § 295. However, these authorities indicate the promisor has deliberately taken steps to impede the condition precedent from occurring or has arbitrarily impaired his or the promisee's ability to perform. The theory underlying this rule appears to be based on the equitable maxim that one cannot profit from or escape liability for his own wrongdoing. See Householder v. Nispel, supra.

█ To the contrary, Kirby made a good faith effort to acquire the insurance and effectuate the condition precedent necessary to the parties' performance. Kirby's compliance was prevented by unforeseen, financial difficulty, an obstacle not within his power to remove. It follows that the clearly worded condition precedent was intended by the parties to prevent the accrual of any duty of performance in just such a situation as arose. Therefore, we do not find that defendant is estopped from asserting Kirby's valid defense against enforcement of the contract.

We have not overlooked other propositions of law presented by counsel for the

parties, but we deem it unnecessary to discuss them in this opinion since the cited authorities entirely dispose of the case on its merits.

Affirmed.