LEE SAPP LEASING, INC., APPELLEE, V. THE CATHOLIC ARCHBISHOP OF OMAHA, DOING BUSINESS AS DANIEL J. GROSS HIGH SCHOOL, APPELLANT.

540 N.W.2d 101

Filed December 1, 1995.   No. S–93–781.

Edward D. Hotz and Patrick M. Flood, of Betterman Katelman & Hotz, for appellant.

Bradley K. Schweer, of Schweer & Ferraro, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

LANPHIER, J.

The Catholic Archbishop of Omaha, doing business as Daniel J. Gross High School (Gross High) refused to make payments to Lee Sapp Leasing, Inc. (LSL), due under a "lease." Under the agreement, Gross High was to purchase surge suppressors from Midwest Energy Controls, Inc. (Midwest Energy), and LSL was to finance the sale. Payment was to be made by LSL to Midwest Energy when Gross High accepted delivery. After some of the suppressors blew up on installation, Gross High asked Midwest Energy to remove the suppressors, refused to accept delivery, and refused to pay LSL. LSL filed a collection action against Gross High in the district court for Sarpy County.

Both parties waived jury trial. After a bench trial, the district court found that under the Nebraska Uniform Commercial Code, the agreement was intended as security governed by article 9 rather than a lease governed by article 2, and that, therefore, Gross High's only remedies were against the true seller of the goods, Midwest Energy. Gross High was ordered to pay the purchase price of the equipment, plus court costs, to LSL. Gross High appealed to the Nebraska Court of Appeals, and we removed the case to our docket. Finding that the duties to perform under the agreement were subject to a condition precedent of Gross High's acknowledgment of delivery which did not occur, we reverse, and remand the cause with directions.

## BACKGROUND

In September 1990, Midwest Energy approached Gross High for the purpose of selling to Gross High surge suppressors which would purportedly save Gross High money on electric bills. Gross High did not want to pay cash for the suppressors, so in order to consummate the sale to Gross High, Midwest Energy contacted LSL for financing. LSL was not in the energy or equipment business, but it agreed to provide financing for the surge suppressors in the form of a lease. Dennis Monahan, general manager of LSL, prepared a lease, dated November 15, 1990.

The agreement provided for 39 surge suppressors made by Redi–Volt and sold by Midwest Energy to be furnished to Gross High in return for monthly rental. The terms of the agreement provided for monthly rental payments of $846.72 for 48 months.

The scheduled payments would return to LSL the cost of the equipment, plus interest. Gross High would become owner of the surge suppressors at the end of the term without additional consideration. Gross High, through its agent, signed the lease.

The language of the lease stated: "**22. INTEGRATION.** This lease and any schedules or addendums attached hereto constitutes the full agreement of the parties . . . ." LSL presented a letter of acceptance and delivery with the lease. The acceptance and delivery letter was attached to the lease, referred to the lease, and was presented to Gross High at the same time as the lease. The letter stated:

### ACCEPTANCE AND DELIVERY LETTER

The *undersigned* Lessee hereby acknowledges receipt of the equipment described below or on any attached schedule (the "Equipment") fully installed and in good working condition, and Lessee hereby accepts the Equipment after full inspection thereof as satisfactory for all purposes of the above referenced lease executed by Lessee with Lee Sapp Leasing, Inc. (the "Lessor"). . . .

. . . .

. . . [Gross High] understands that [LSL] is relying upon this receipt *as a condition for* making payment for the cost of the leased Equipment to [Midwest Energy].

(Emphasis supplied.)

Although the letter was dated November 15, 1990, the same date as the lease, a handwritten notation stated it was to be signed when the equipment was delivered. LSL does not dispute that the acceptance and delivery letter was a part of the transaction. LSL did maintain that contrary to the language of the documents, the receipt of the letter was a condition of LSL paying only the final 10 percent due to Midwest Energy.

Gross High neither signed nor returned this letter to LSL. Notwithstanding that fact, LSL paid Midwest Energy. Midwest Energy paid the first month's rent and a security deposit to LSL. Midwest Energy's employees attempted to install the surge suppressors at Gross High, but encountered problems. Robert Priborsky, Midwest Energy's installer, wrote to LSL and stated:

As you know, I have been trying desperately to get Global Marketing [Midwest Energy's supplier] to replace the Redi–Volt units, that went out during installation at Gross High School.

. . . .

So in closing, because of Global Marketings [sic], lack of interest and support of their product, I am unable to complete the installation at Gross High School, for Midwest Energy Controls, Inc.

During installation of 24 of the 39 surge suppressors by Midwest Energy, 3 of the suppressors "blew up." Midwest Energy never completed installation of all 39 suppressors. Gross High requested that Midwest Energy remove the installed surge

suppressors, but Midwest Energy did not comply. Gross High never accepted delivery of the suppressors or made a payment to LSL on the agreement.

## ASSIGNMENTS OF ERROR

Gross High contends that the trial court erred (1) in refusing to recognize that article 2 of the Nebraska Uniform Commercial Code governed the sales aspects of the agreement transaction, (2) in concluding that Gross High's defenses amounted to a breach of warranty, and (3) in refusing to apply the provisions of Neb. U.C.C. § 2-606 (Reissue 1992), entitled "What constitutes acceptance of goods," to the evidence presented at trial.

## STANDARD OF REVIEW

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Lincoln Lumber Co. v. Fowler, ante* p. 221, 533 N.W.2d 898 (1995); *First Westside Bank v. For-Med, Inc.*, 247 Neb. 641, 529 N.W.2d 66 (1995); *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995).

However, when reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Eggers v. Rittscher*, 247 Neb. 648, 529 N.W.2d 741 (1995); *Dolan v. Svitak*, 247 Neb. 410, 527 N.W.2d 621 (1995); *Hausse v. Kimmey*, 247 Neb. 23, 524 N.W.2d 567 (1994).

## ANALYSIS

Gross High urges that it has certain rights under article 2 of the Nebraska Uniform Commercial Code which govern the defects in the goods and its nonacceptance of same. LSL urges that article 9 of the Nebraska Uniform Commercial Code governs and that LSL as a financing entity has no responsibility for a defect in the goods and, in any event, that Gross High's refusal to accept delivery and the fact that the goods may have been defective are affirmative defenses which were not pled.

Within that framework, the parties argue over the legal effect of the undisputed fact of Gross High not signing or returning the acceptance and delivery letter to LSL.

The Nebraska Uniform Commercial Code provides that general principles of contract law supplement its provisions unless displaced by particular provisions of the code. Neb. U.C.C. § 1-103 (Reissue 1992).

The general principle of contract law at issue here is not displaced by the particular provisions of the code at issue. See, *Cyberchron Corp. v. Calldata Systems Development*, 831 F. Supp. 94 (E.D.N.Y. 1993), *aff'd in part, vacated in part, and remanded* 47 F.3d 39 (2d Cir. 1995); *Brown Mach. v. Hercules, Inc.*, 770 S.W.2d 416 (Mo. App. 1989); *Armco Steel Corp. v. Isaacson Struct. Steel*, 611 P.2d 507 (Alaska 1980).

The threshold question of law which must be addressed is, what is the legal significance of the refusal of Gross High to accept delivery, given that LSL paid Midwest Energy without receiving the acceptance and delivery letter from Gross High?

Both the lease and the acceptance and delivery letter were part of the LSL–Gross High agreement. The lease itself made the letter part of the agreement. The applicable terms in the lease stated, "This lease and any schedules or addendums attached hereto constitutes the full agreement of the parties . . . ." The acceptance and delivery letter was attached to the lease and presented at the same time as the lease.

The law of Nebraska also makes the letter part of the agreement. Instruments made in reference to and as part of the same transaction are to be considered and construed together; that the instruments were made or dated at different times is not significant if they are related to and were part of the transaction. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993) (citing *Alder v. First Nat. Bank & Trust Co.*, 241 Neb. 873, 491 N.W.2d 686 (1992)); *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992); *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983); and *Northland Mortgage Co. v. Royalwood Estates, Inc.*, 190 Neb. 46, 206 N.W.2d 328 (1973)). The acceptance and delivery letter was made in reference to and as part of the same transaction.

The acceptance and delivery letter stated, "[Gross High] understands that [LSL] is relying upon this receipt as a condition for making payment for the cost of the leased Equipment to [Midwest Energy]." Is LSL's receipt of the letter

from Gross High a condition precedent to performance of Gross High's duty to pay LSL?

Clearly, if LSL were not to pay Midwest Energy then LSL would have no standing to sue Gross High. It is also clear that if LSL were to pay Midwest Energy after receipt of the letter, Gross High would have no standing to contest its obligation to LSL. Here payment was made by LSL to Midwest Energy without receiving the acceptance and delivery letter from Gross High. If an agreement provides for the payment of money upon the happening of certain contingencies, the cause of action will usually not arise until occurrence of the conditions. *Creighton Real Estate Co. v. City of Omaha*, 112 Neb. 802, 201 N.W. 657 (1924), *rev'd on other grounds* 112 Neb. 802, 204 N.W. 66 (1925).

The existence of a condition precedent depends upon the intent of the parties as gathered from the words they have employed. *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (1991). Testimony will not be allowed to vary the meaning of the document. If the contents of a document are not ambiguous, the document is not subject to interpretation and will be enforced according to its terms. *Home Fed. Sav. & Loan v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678 (1993). Thus, the testimony of LSL that the payment LSL was to make to Midwest Energy, which payment was conditional on receipt of the acceptance and delivery letter and was only the final 10 percent, will not be allowed to vary the terms of the documents.

The words "as a condition for" in the acceptance and delivery letter are clearly language intended to create a condition precedent. See, *Harmon Cable Communications, supra*; *ConAgra, Inc. v. Cargill, Inc.*, 222 Neb. 136, 382 N.W.2d 576 (1986) (White, J., dissenting) (citing *Omaha Public Power Dist. v. Employers' Fire Insurance Co.*, 327 F.2d 912 (8th Cir. 1964)).

The Restatement (Second) of Contracts § 224 (1981) provides, "A condition is an event, not certain to occur, which must occur, unless its non–occurrence is excused, before performance under a contract becomes due." LSL's receipt of the acceptance and delivery letter from Gross High was a

condition precedent to LSL paying Midwest Energy. Due to the poor quality of the surge suppressors and the abandonment of installation by Midwest Energy, Gross High neither signed nor returned the acceptance and delivery letter to LSL.

The Restatement (Second) of Contracts § 229 (1981) states, "To the extent that the non–occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non–occurrence of that condition unless its occurrence was a material part of the agreed exchange."

The nonoccurrence of a condition precedent cannot be excused if occurrence of the condition was a material part of the agreed exchange. Gross High was to pay Midwest Energy for purchase, delivery, and installation of goods at Gross High via its agreement with LSL. The condition precedent was apparently put in place to ensure that the goods arrived and were installed before Gross High was liable for the cost of the goods.

The payment by LSL to Midwest Energy prior to delivery of the acceptance and delivery letter from Gross High is not an affirmative defense which must be pled by Gross High. It is a condition precedent which LSL must comply with and prove to be entitled to demand performance from Gross High. See *Coppi v. West Am. Ins. Co.*, 247 Neb. 1, 524 N.W.2d 804 (1994).

In a similar case, it has been held that equivalent language in a lease between two parties created a condition precedent to a third party's duty to repay money. *Suburban Transfer Serv. v. Beech Holdings, Inc.*, 716 F.2d 220 (3d Cir. 1983). In *Suburban Transfer Serv.*, A and B entered into an agreement whereby A would grant a lease to C. However, in order to enter the premises C needed extra cash. A therefore agreed to loan the cash to C if B would guarantee the loan. B agreed to guarantee the loan. A and C then entered into a lease. The lease had a loan provision which stated: " '[A would make a loan to C] provided, however, that the Loan shall be in the form of a Note and Security Agreement as set forth in Exhibit C attached hereto and made a part hereof . . . .' " (Emphasis omitted.) *Id.* at 222. A gave C the loan but failed to use the stated form attached to the agreement. C subsequently defaulted on the

loan. A demanded that B pay the loan. B refused. A filed an action.

The U.S. Court of Appeals for the Third Circuit in *Suburban Transfer Serv.* held that the specified form of the loan, a "Note and Security Agreement," was clearly a condition precedent to B having to repay the loan to C. Basically, the condition precedent of the initial payment of money was also a condition precedent to the third party's repayment of that money.

In the instant case, LSL argues that Gross High has a duty to make payment to LSL, because LSL made payment to Midwest Energy. However, a condition precedent existed which provided that LSL would not make payment to Midwest Energy until LSL received the acceptance and delivery letter from Gross High. LSL did not receive the letter from Gross High. Disregarding the condition precedent in the agreement, LSL made payment to Midwest Energy prior to receiving the letter. LSL's payment to Midwest Energy was therefore contrary to the agreement with Gross High. The nonoccurrence of the condition precedent cannot be excused. It is a material part of the exchange. The condition precedent of receipt of the acceptance and delivery letter from Gross High prior to the payment of money by LSL to Midwest Energy was also a condition precedent to Gross High's being required to repay the money to LSL.

The first dissent to this opinion correctly states the majority's holding. The dissent states that "the signing of the acceptance and delivery letter was a condition precedent to Gross High's duty to perform under the lease agreement." The dissent then takes issue with this holding. The premise for this disagreement is that the letter was not part of the lease transaction because it was never executed. The dissent defines execution as "to sign." The dissent argues that because the letter which acknowledged receipt of the leased goods was never signed, it is meaningless to the lease transaction.

The letter states that signing it acknowledges receipt of the leased goods and that receipt of the signed letter is a condition of payment by lessor for those goods. As exemplified in *Suburban Transfer Serv., supra*, payment by lessor for the

goods was a condition for repayment by lessee. Therefore, signing the letter satisfies the condition precedent.

The dissent reasons that to be part of the transaction the letter had to be signed. Requiring that a condition precedent be satisfied before it becomes "part of the transaction" eviscerates the law of condition precedent.

The dissent also reasons that even if the letter had been signed, it would still not be part of the lease transaction. The dissent attempts to buttress this premise with the case of *Gerdes v. Omaha Home for Boys*, 166 Neb. 574, 89 N.W.2d 849 (1958). *Gerdes*, which dealt with testamentary instruments which varied one another, is inapplicable to the issues in this case.

The other dissent to this opinion, after citing the entire acceptance and delivery letter, asserts:

> Had the document been signed, Gross High would have admitted that it received and accepted the equipment on November 15, 1990, fully installed, in good working condition, and satisfactory for all purposes; that LSL had fully performed all covenants and conditions; that LSL made no warranties; and that Gross High had no defenses or counterclaims against LSL in connection with the lease.

The above is accurate; however, it omits one further result which is the central issue in this case. Had the document been signed and returned to LSL, "a condition for making payment for the cost of the leased Equipment to [Midwest Energy]" would have been satisfied. Without satisfying that condition, LSL could not pay Midwest Energy and that is a condition precedent to require repayment from Gross High.

## CONCLUSION

The duty of Gross High to pay LSL did not arise. The condition precedent of payment by LSL after receipt of the acceptance and delivery letter from Gross High did not occur. It is unnecessary to discuss whether article 9 or article 2 of the Nebraska Uniform Commercial Code applies to the transaction.

The judgment is hereby reversed, and this cause is remanded with directions to enter judgment for Gross High.

REVERSED AND REMANDED WITH DIRECTIONS.

CONNOLLY, J., dissenting.

Gross High's duties to perform under the lease agreement were not dependent upon its acknowledgment of delivery of the surge suppressors.

The majority finds that the acceptance and delivery letter was part of the agreement between LSL and Gross High, because it constituted an addendum to the lease. However, there are several problems with considering the acceptance and delivery letter as an addendum. First, the majority states that the acceptance and delivery letter was attached to the lease and delivered at the same time. While the record indicates that the acceptance and delivery letter was delivered at the same time as the lease, there is no evidence in the record that the acceptance and delivery letter was attached to the lease. Additionally, the lease contains no reference to the acceptance and delivery letter.

Second, the majority concludes that the letter was an addendum despite the fact that it was not labeled as such. The parties' actions demonstrated that when they intended a writing to be considered an addendum to the lease, it was labeled an addendum. For example, the lease makes explicit reference to addendum 1, which describes the property that is the subject of the lease. The lease makes no such reference to the acceptance and delivery letter.

Third, the acceptance and delivery letter was not executed at the same time as the lease. Execute is defined in relevant part as "[t]o complete; to make; to sign." Black's Law Dictionary 567 (6th ed. 1990). While the parties signed the lease on November 15, 1990, Gross High never signed the acceptance and delivery letter. In fact, Monahan testified that he told Gross High's principal not to sign the acceptance and delivery letter until after the surge suppressors were received and installed. Nevertheless, the majority determines that the unsigned acceptance and delivery letter must be construed together with the lease as one contract.

The majority cites a number of cases stating the proposition that instruments made in reference to and as part of the same transaction are to be considered and construed together. The majority asserts that *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993), should control this case. In

*Feldman*, a supplemental lease executed at a later date was held to supersede inconsistent provisions in the original lease. However, neither *Feldman* nor any of the cases cited by the majority concern transactions in which one instrument is never executed. All of the cases cited by the majority concern situations in which the two separate instruments were executed at some time.

While the majority concludes that instruments "made or dated at different times" may be construed together "if they are related to and were part of the transaction," the majority fails to recognize that in this case, the acceptance and delivery letter was never executed. The authority cited by the majority indicating that documents executed separately can be construed together is not on point, because it applies to documents that have actually been executed.

Even if the acceptance and delivery letter had been executed, it would not need to be read together with the lease. This court has stated that

> a provision of one document [need not be] imported bodily into another contrary to the intent of the parties or the express provision of the [document]. They may be intended to be separate writings though made at the identical time by the same parties and to provide for entirely different things.

*Gerdes v. Omaha Home for Boys*, 166 Neb. 574, 585, 89 N.W.2d 849, 856 (1958).

The majority correctly asserts that we cannot look to the intent of the parties to vary the meaning of the lease document. However, this court has held that parol evidence is generally admissible when offered for the purpose of explaining and showing the true nature of the transaction between the parties. *Peterson v. Hynes*, 220 Neb. 573, 371 N.W.2d 664 (1985). In this case, parol evidence would not be used to vary the meaning of the lease. Instead, evidence of the intent of the parties would assist in determining whether the acceptance and delivery letter was intended to be a part of the lease agreement.

The record indicates that the parties did not intend for the acceptance and delivery letter to be a part of the lease agreement. LSL's general manager, Dennis Monahan, testified

that while he delivered the acceptance and delivery letter at the same time as the lease, it was intended to be a separate document and not a part of the lease agreement. Gross High's business manager, Julien Van Haute, did not contradict Monahan's testimony. While Van Haute testified that the acceptance and delivery letter was received at the same time as the lease, he did not dispute Monahan's characterization of the parties' understanding. In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d 189 (1994).

As *Gerdes* indicates, the court may not do violence to a complete, unambiguous contract by consolidating it with another writing if the effect of doing so would be to avoid an essential part of the contract. By consolidating the acceptance and delivery letter with the lease, Gross High will be able to avoid its obligation under the lease. This violates the terms of the clear, unambiguous lease agreement signed by the parties.

Nevertheless, the majority contends that the signing of the acceptance and delivery letter was a condition precedent to Gross High's duty to perform under the lease agreement. However, there is no language in the lease to indicate that there are any conditions precedent to the performance of Gross High's obligation under the agreement. In fact, the lease states that the first lease payment was due on November 15, 1990, which was the date that the lease agreement was executed. As stated previously, the acceptance and delivery letter was not to be signed until the equipment was received, "fully installed and in good working condition"; however, no mention is made in the lease that Gross High could withhold payment until such time as the acceptance and delivery document was signed. Therefore, Gross High's obligation under the lease was independent of its signing of the acceptance and delivery letter.

The majority seizes upon one sentence of an unsigned document to determine that Gross High should be released from its clear obligation under the lease, because Gross High never signed the letter acknowledging delivery of the equipment. I disagree. The letter clearly did not create a condition precedent

as to Gross High's obligation to pay LSL. The district court's judgment should be affirmed.

WRIGHT and GERRARD, JJ., join in this dissent.

WRIGHT, J., dissenting.

The majority finds that the "duties to perform under the agreement were subject to a condition precedent of Gross High's acknowledgment of delivery which did not occur." I disagree with this conclusion. The full contents of the document are set forth below:

### ACCEPTANCE AND DELIVERY LETTER

The undersigned Lessee hereby acknowledges receipt of the equipment described below or on any attached schedule (the "Equipment") fully installed and in good working condition, and Lessee hereby accepts the Equipment after full inspection thereof as satisfactory for all purposes of the above referenced lease executed by Lessee with Lee Sapp Leasing, Inc. (the "Lessor"). Lessee certifies that Lessor has fully and satisfactorily performed all covenants and conditions to be performed by Lessor under the Lease and has delivered the Equipment selected solely by Lessee in accordance with Lessee's directions.

**LESSEE AGREES THAT THE LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MER-CHANTABILITY, ITS CONDITION, AND/OR ITS QUALITY, AND AS BETWEEN LESSEE AND LESSOR OR LESSOR'S ASSIGNEE, LESSEE LEASES THE EQUIPMENT "AS IS" AND LESSEE AFFIRMS THAT IT HAS NO DEFENSES OR COUNTER-CLAIMS AGAINST LESSOR IN CONNECTION WITH THE LEASE.**

Lessee represents and warrants that none of the equipment was delivered prior to the date the undersigned

executed the subject lease unless Lessor shall have previously consented thereto. Lessee understands that Lessor is relying upon this receipt as a condition for making payment for the cost of the leased Equipment to Vendor.

Daniel J. Gross High School
(Lessee)

Date Equipment

Accepted: November 15, 1990 By: _____

**DESCRIPTION** and Serial Number(s) of

**PROPERTY DELIVERED AND ACCEPTED:**

SEE LEASE ADDENDUM #1 DATED AND SIGNED THIS DATE

The majority claims that a condition precedent is created by the following: "Lessee understands that Lessor is relying upon this receipt as a condition for making payment for the cost of the leased Equipment to Vendor." I disagree. Had the document been signed, Gross High would have admitted that it received and accepted the equipment on November 15, 1990, fully installed, in good working condition, and satisfactory for all purposes; that LSL had fully performed all covenants and conditions; that LSL made no warranties; and that Gross High had no defenses or counterclaims against LSL in connection with the lease.

The document clearly does not create a condition precedent for the performance of Gross High's duty to pay LSL.